**THIRD DIVISION**
**DILLARD, C. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 14, 2019**

# In the Court of Appeals of Georgia

A19A0329. EARLS v. ANEKE et al.

DILLARD, Chief Judge.

Anthony Earls appeals from the trial court's grant of summary judgment to Princewill Aneke, individually, and Aneke Law Offices, LLC, as an assignee of Princewill O. Aneke, LLC, now known as Sunshine Real Estate Properties I, LLC (collectively, "Aneke"). Earls argues, *inter alia*, that the trial court erred by denying his motion for summary judgment based on a mischaracterization of his arguments and, accordingly, failing to adjudicate the arguments underlying his motion for summary judgment. Because we agree with Earls that the trial court failed to properly consider his primary argument in favor of summary judgment, we vacate the trial court's order and remand for the reasons set forth *infra*.

Viewed in the light most favorable to Earls (*i.e.*, the nonmoving party),[1] the record shows that Earls and his wife were involved in an automobile accident in March 2015 when the big-rig truck his wife was driving for her employer was struck by another commercial vehicle. Earls sustained multiple injuries in the accident, resulting in significant medical expenses.[2] Shortly after the collision, Earls was taken by a friend to a chiropractor's office, where he met Portia Rolland, a paralegal from a local law firm. During his meeting with Rolland, Earls signed an attorney-client contract. The validity of this agreement is at the heart of the parties' dispute.

The agreement provided that Earls hired "Princewill Aneke of Princewill O. Aneke, L.L.C. ('THE FIRM'), as my attorney, to represent me against all persons or entities for the injuries I sustained on, or about the 30th day of March, 2015," and further provided as follows:

> I agree to pay the Firm thirty-three (33 1/3%) percent of the gross recovery made for me in the event such recovery is obtained without the necessity of filing a lawsuit or utilizing mediation, arbitration or other alternative dispute resolutions. Should my recovery occur after a lawsuit

---

[1] *See, e.g.*, *Stanley v. Gov't Employees Ins. Co.*, 344 Ga. App. 342, 342 (810 SE2d 179) (2018).

[2] Earls's wife was also injured in the accident, but she is not a party to this appeal.

is filed, or mediation or arbitration held, then I agree to pay the Firm forty (40%) percent of the gross recovery.

The agreement also provided that

Client may dismiss the Firm at any time, upon written notice to the Firm. Client agrees that should they dismiss the Firm from representing them in their claim herein, Client would remain liable to the Firm, and herewith irrevocably assign to the Firm, the applicable percentage of fee due the Firm under this Agreement of the highest offer that was made by any adversary or collateral party during the Firm's employment by Client. In the event no offer has been made, Client agrees to pay [F]irm attorney fees for the time firm has expended working on Client's case, to be assessed at the rate of one hundred fifty dollars per hour.

The agreement was signed by Earls and Rolland on behalf of the firm. Rolland was employed by the firm as an independent contractor paralegal, and the terms of her agreement with the firm specified that, as part of the services she would provide, she would "[a]ct as an agent of the law firm in respect to dealing with prospective new clients[.]" As part of the scope of her agency, Rolland was permitted to "[e]nter into binding agreements on behalf of the law firm by signing contracts between the law firm and clients who have agreed to retain the services of the law firm."

On March 20, 2016, Aneke received in writing an offer to settle Earls's claim for $500,000, and Earls was then presented with this offer. Around this same time, Earls became dissatisfied with the representation he was receiving from Aneke, and on May 17, 2016, Earls notified Aneke in writing, through his new counsel, that Aneke's services were terminated, effective immediately. Then, just three days after sending this termination notice via his new counsel, Earls received an updated settlement offer of the defending insurance agency's remaining policy limits, and he ultimately received a settlement check for $662,380.99.

In March 2017, Aneke filed suit against Earls for breach of contract, quantum meruit,[3] and seeking attorney fees and costs of litigation under OCGA § 13-6-11.[4] Earls answered, asserting as his defenses that, *inter alia*, he was not liable to Aneke because "no contract for legal services ever existed since neither the individual Plaintiff nor any member of either of the named limited liability companies signed the

[3] Aneke pleaded quantum meruit in the alternative, and Earls has never contested that Aneke may be entitled to relief on this ground.

[4] *See* OCGA § 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.").

purported contract that is the subject of this litigation" and "the subject contract was never effectuated by an individual or firm licensed and authorized to practice law in Georgia."

Aneke filed a motion for summary judgment in May 2018, arguing that the agreement signed by Earls was binding and valid, obligating Earls to perform under its terms; that the contract was signed by Rolland as an agent for the firm, and that she had apparent and actual authority to bind the firm to a contract; and that Aneke's new law firm, Aneke Law Offices, LLC, was the successor in interest to the former Princewill O. Aneke, LLC.

In response to Aneke's motion, Earls argued that the agreement between the parties could *not* have been valid or binding because the former firm was incapable of performing legal services, as "it had not been formed and designated as a professional corporation, and hence never existed at any time, including the date of signing of the subject contract, as a professional corporation that was authorized to practice law in Georgia." Then, in June 2018, Earls filed his own motion for summary judgment, again arguing that Princewill O. Aneke, LLC, and its successor following a name change, Sunshine Real Estate Properties I, LLC, were not professional corporations for the purpose of practicing law.

5

In response to Earls's motion for summary judgment, Aneke argued that Rolland signed the contract at issue on behalf of Princewill O. Aneke, LLC, and had actual authority to do so, and that his former law firm, Princewill O. Aneke, LLC, properly entered into the agreement. Aneke also asserted that, on the day after Earls received the $500,000 offer of settlement, he restructured his law practice and other businesses by organizing[5] Aneke Legal Services, LLC, in order to continue the operation of his law practice after changing the name of Princewill O. Aneke, LLC, to Sunshine Real Estate Properties I, LLC. Then, Aneke organized Aneke Law Offices, LLC, to use in lieu of Aneke Legal Services, LLC.

In response to Aneke's opposition to the cross-motion for summary judgment, Earls argued that because Aneke's former law firm, Princewill O. Aneke, LLC, was a limited liability company, and not a professional corporation, Earls could not enter

---

[5] In his pleadings, Aneke asserted that he "incorporated" the various companies; however, this opinion uses the terminology that actually applies to limited liability companies. *See* OCGA § 14-11-203 (a) ("One or more persons may act as the organizer or organizers of a limited liability company by delivering articles of organization to the Secretary of State for filing . . . ."); OCGA § 14-11-203 (c) ("A limited liability company is formed when the articles of organization become effective pursuant to Code Section 14-11-206."). *Cf.* OCGA § 14-2-140 (4) ("'Corporation' or 'domestic corporation' means a corporation for profit, which is not a foreign corporation, incorporated under or subject to the provisions of this chapter.").

into a binding contract *with the firm* for the provision of legal services because the firm itself, as an LLC, could not provide legal services. Thus, because only Aneke was a licensed attorney, in order for the contract to be valid, it needed to be signed by Aneke and not by Rolland.

Following a hearing on the competing motions, the trial court issued an order on July 24, 2018. First, the trial court explained its understanding to be that Earls was arguing (1) "Rolland did not have authority to enter into the contract for the Firm, and that the contract is therefore null and void" and (2) that the firm and its successor assignees could not practice law because they were not incorporated as professional corporations. The court then concluded that Rolland had authority to sign on behalf of the law firm and entered into a binding contract as its agent, and denied summary judgment to Earls and granted summary judgment to Aneke on that basis. Then, the court concluded that because Aneke was a licensed attorney in good standing, he was permitted to practice law with a firm in the form of a limited liability company, and it denied Earls's motion on this ground. The court also denied Earls's motion on the ground that *this* Court has "expressly approved attorney-client contracts containing provisions almost exactly like" the paragraph at issue, and it denied summary judgment to Earls on that ground as well. Ultimately, the court declared that it was

denying Earls's motion, granting Aneke's motion, and awarding a judgment to Aneke in the amount of the requested $166,666.66, plus court costs. This appeal by Earls follows.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] And when summary judgment is granted, the order "enjoys no presumption of correctness on appeal, and it is our responsibility to determine if the requirements of OCGA § 9-11-56 (c) have been satisfied."[7] In other words, in conducting this *de novo* review, we are "charged with viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[8] With these guiding principles in mind, we turn now to Earls's enumerations of error.

1. First, in separate but related enumerations of error, Earls contends that the trial court erred in denying his motion for summary judgment when it

---

[6] *Stanley*, 344 Ga. App. at 343 (punctuation omitted).

[7] *Id.*

[8] *Id.* (punctuation omitted).

mischaracterized or misunderstood his contentions regarding PCs and LLCs, and, accordingly, failed to adjudicate those arguments. We agree that the trial court did not fully grasp what Earls argued as to PCs and LLCs, and because the court did not rule upon this question, we vacate and remand for its consideration of this argument in the first instance.

Earls maintains the trial court erroneously concluded that he argued "attorneys are prohibited from the practice of law in the form of a Limited Liability Company" and ultimately ruled that the law does not prohibit same. But instead, what Earls argued is that "a limited liability company, itself, may not practice law unless it is organized under the Professional Corporations Act . . . or the Professional Associations Act (requiring two or more members)." Earls asserts that Princewill O. Aneke, LLC was never registered under the Professional Corporations Act. As a result, Earls argues that Aneke *himself*—the only licensed attorney who practiced as Princewill O. Aneke, LLC—was required to sign the attorney-client contract at issue, which was instead signed by a layperson operating as an independent contractor agent or employee of the firm.

The trial court never addressed this aspect of Earls's argument, which also relies upon and refers to various documents of organization and their timing's impact

on the contract and, likewise, which entity was the real party in interest at the time Aneke filed suit. For example, the certificate of organization for Princewill O. Aneke, LLC, shows that it was organized as a "domestic limited liability company" on April 18, 2007. But a certificate of amendment, dated April 11, 2016, effectuated a name change for Princewill O Aneke, LLC, to Sunshine Real Estate Properties I, LLC. Aneke deposed that the name change to Sunshine Real Estate Properties I, LLC was a mistake, and that he instructed for the name of his law practice to be changed to Aneke Law Offices. And when this was not done, he newly organized Aneke Law Offices. Aneke further testified to starting Sunshine Real Estate Properties because he purchased multiple real estate properties in the name of Princewill O. Aneke, LLC, and he decided it would be best to transfer those properties into the name of a real estate company. The scope of services provided by Sunshine Real Estate Properties is to own properties, dispose of properties, and "branch into any property-related matters in the future."[9]

On the other hand, Aneke also testified that, "to the best of [his] knowledge," his former law firm's name was changed to Aneke Legal Services, and that Aneke

---

[9] Aneke's wife, who is a medical doctor, is also a member of Sunshine Real Estate Properties.

Legal Services, which later became Aneke Law Offices, carried the same tax ID that belonged to Princewill O. Aneke, LLC. Additionally, Aneke executed a transfer and assignment of rights and liabilities of Princewill O. Aneke, LLC, to Aneke Law Offices, LLC, effective on June 14, 2016. He asserted that the purpose of the transfer and assignment was to "continue under the new entity any relationships and contracts and legal work that had been done under Princewill O. Aneke, LLC[.]" But Aneke agreed that, at the time the transfer and assignment was signed, Princewill O. Aneke, LLC, was no longer an entity, its name already having changed to Sunshine Real Estate Properties I, LLC.

As for Aneke's other LLCs, the articles of organization for Aneke Legal Services, LLC, show that it was organized as a "domestic limited liability company" on March 31, 2016.[10] And the certificate of organization for Aneke Law Offices, LLC, shows that it was also organized as a "domestic limited liability company" on June 14, 2016.[11]

_____

[10] The articles of organization did not include any optional provision with a stated purpose for the company.

[11] Within the articles of organization for Aneke Law Offices is a statement included as an "optional provision" that the "purpose of the company is to practice the profession of law and the company elects to be governed where applicable by the provisions of OCGA § 14-7-1 et seq. Only a person authorized to practice law in the

11

The trial court's misapprehension of Earls's argument resulted in it ruling against him and in favor of Aneke. And now, Earls argues that the trial court *erred* by misunderstanding or mischaracterizing his argument. But when this Court reviews a decision of a trial court on a motion for summary judgment, it "sits as a court for the correction of errors of law."[12] And an error of law has as its basis a "specific ruling made by the trial court."[13] Thus, because the trial court never considered Earls's true argument, it did not rule upon it.[14] To be sure, there are instances when this Court will review a record and determine that a summary judgment ruling was right for a reason

State of Georgia and in good standing with the State Bar of Georgia and in good standing with the State Bar of Georgia may be a member of the company."

[12] *Piedmont Hosp., Inc. v. D. M.*, 335 Ga. App. 442, 448 (3) (779 SE2d 36) (2015) (punctuation omitted).

[13] *Id.* (punctuation omitted).

[14] *See Auto-Owners Ins. Co. v. Hale Haven Props., Inc.*, 346 Ga. App. 39, 54 (3) (a) (815 SE2d 574) (2018) ("Although both parties' timeliness arguments were raised in the trial court, the record does not show that the trial court addressed them. Thus, if we were to conclude that the trial court erred, it would be on account of an issue never ruled on below." (punctuation omitted)); *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. 836, 848 (4) (752 SE2d 18) (2013) ("Although the issue of an extension to the . . . Agreement was raised below by the evidence and by [the] arguments in support of [the] motion for summary judgment, the trial court did not address the matter in its summary judgment order. Thus, if we were to conclude that the trial court erred, it would be on account of an issue never ruled on below.").

other than the one given by the trial court, but it is improper for us to consider whether the trial court was "wrong for any reason."[15] Indeed, without a ruling on this specific question, the issue is outside the proper scope of our review.[16] Accordingly, we vacate the trial court's order granting summary judgment to Aneke and denying summary judgment to Earls, and we remand for the trial court's consideration of what Earls *actually* argues, as discussed and detailed *supra*.

2. Because we vacate and remand in Division 1, we need not address Earls's remaining enumerations of error.

---

[15] *See Auto-Owners Ins.*, 346 Ga. App. at 54 (3) (a) ("And although in certain instances an appellate court can review a record and determine that a summary judgment ruling was right for some reason other than that given by the trial court, an appellate court should not consider whether the trial court was 'wrong for any reason.'" (punctuation omitted)); *Piedmont Hosp.*, 335 Ga. App. at 449 (3) (same).

[16] *See Auto-Owners Ins.*, 346 Ga. App. at 54 (3) (a) ("These [unruled upon] arguments are therefore beyond our proper scope of review."); *Piedmont Hosp.*, 335 Ga. App. at 449 (2) ("Here, the trial court expressly declined to rule on the issue of whether [the appellants] are equitably estopped from asserting a statute of repose defense based on its erroneous determination that no medical malpractice claims remained. Because the trial court did not reach the issue of equitable estoppel in denying the motions for summary judgment, we find that the issue is outside the proper scope of our review in this appeal.").

For all these reasons, we vacate the trial court's order and remand for proceedings consistent with this opinion.[17]

*Judgment vacated and case remanded with direction. Gobeil and Hodges, JJ., concur.*

---

[17] We thank attorney David Martin for his thoughtful amicus brief.